Okay, our second to the last case today is Fulton v. Kroger. That's case number 416-0234. For the appellant we have Mr. John Schwulst and for the athlete Ms. Monica Benet. I'm not very good at pronouncing names so when I get one right it makes me feel good. Mr. Schwulst, you may proceed. May I please report to counsel? This is a case presented here today on whether summary judgment was properly granted in this case. Your review obviously is de noble and so I would like to first emphasize what I believe the mistake was that God is here. The issue really is on a slip and fall where there is a height differential. The facts of the depositions on file indicated that there was a range from one and a half to five inches in height depending on which witness the appellee is referring to. Wait a minute, that wasn't the lip itself, that was from the highest point to the lowest point, correct? Of the ramp or whatever you want to describe. I didn't offer in my reply brief on page 15, I didn't offer that as evidence outside the record, I've just given a demonstrative exhibit to indicate that we have about a four inch curb which counsel has admitted at page 13 of their brief that the curb of the sidewalk is four inches above the parking lot and we have a ramp that goes down to zero in the parking lot. The crux of the matter on the facts here is that they are taking, that is the appellees are taking the height differential testimony of Mr. Warren Fulton who is the plaintiff's husband as gospel here in terms of, he said it was about an inch and a half, but he wasn't measuring, he wasn't even looking at the height. He wasn't even sure where she fell and so when we look at what is truly admissible evidence, Mrs. Fulton testified in her deposition that the differential was anywhere from three to five inches, she didn't measure it either, but she fell so that her body landed half on top of the sidewalk and half still down on the ramp. So we are very close to that four inch height differential where her torso hit the deck and of course she shattered her arm which left her with permanent injuries. So what I believe is that when we look at this, of course the trial court looked at it and said well, you know, it's less than two inches, but the trial court didn't make a record of this and we are here to know more anyway so this court gets to look at what are we really doing in terms of summary judgment when there is a dispute, in fact it's not even a dispute, it's just one person who never saw the fall saying an inch and a half and he was talking about the painted area, not specifically the side or edge of the ramp. Mrs. Fulton said I came at the ramp from an angle rather than head on like you normally would do, it was raining out, I wanted to get under the covering right there where the ramp meets the sidewalk and it's right in front of the doors of the Kroger store, the only entrance into the Kroger store. So at this point I have suggested the court look carefully, especially at the Kent Bank case that I cited and Bledsoe which both indicate that where you have a defect in the pavement, and this wasn't so much a defect as a designed in ramp, I mean there was no weather problems here or anything, it was just a ramp that went up, tailed off to the sides and no paint along that side, yet the curb all had chipped yellow paint on it and within a couple of weeks I realized this doesn't prove negligence, you can't use subsequent repairs, but they did occur and the subsequent repairs then made the whole area flush. I thought that Mrs. Fulton testified she never looked at the crack on the day she fell and she didn't know how big it was or how deep it was. Well, I think as we looked at her deposition testimony, Mr. Cozy was deposing her and inarticulate would be a good word for her in terms of she didn't know how to phrase it. Well that's what she's talking about whether it was a hole or a crack or something like that. Right. But where is this 3 to 5 inches you're talking about in her deposition? That was at page 353 and 364 of the common law record and I cited that in my reply brief where she clearly indicated when she tripped she went down immediately and was half on the sidewalk, half still on the ramp as she lay across this coming in at an angle. Right, I understand that. I saw that testimony, but you were talking about the fact that she testified in her deposition that the differential was 3 to 5 inches. That was her best estimate. And that's at page 353 and 364 of the common law record? 353 and 364. And so what we have is, in my opinion, counsel is cherry picking what is the height differential. What I find amazing was that Mr. Fulton wasn't even asked what the height differential was. And on page 6 of my reply brief I gave verbatim of what he said. His question was, Mr. Cozy's question was, did you see in your mind what must have caused her fall? Well yeah, it was very apparent to me. Question, what do you think it was? Well from the curb, so he's talking about this curb there on the sidewalk, was like an inch and a half that wasn't painted. It didn't say it was an inch and a half in vertical displacement, it just said an inch and a half that wasn't painted. Well if you go on it says in height, right? And then it carried out from there and it measured like an inch and a half. And that's what I mean, even if you saw the yellow, I mean you would still catch your foot on it. That's what happened and it's not that way now. And repairs were done already, this was April 15th, and the repairs were done by May. But Mr. Schultz, if you go on it says, so when you say an inch and a half, you mean an inch and a half in length? And he said height. In height, okay, how about in length? I would say 18. It came out there, yeah, I don't know, 18, I'd say it came out at least a foot. So he is talking about a vertical difference of an inch and a half. Correct, and she is talking about three to five inches. And so how do you, in a motion for summary judgment, how do you differentiate what is it? You can't choose one witness over another in a motion for summary judgment. You have to go with, is there a discrepancy? It becomes a jury question. It's up for the jury to decide what is this height differential. And quite frankly, by the time the photos were taken, most of the lot had been changed. And so it wasn't there anymore for anyone to go measure. And so that leaves us in this no man's land of, well, what was it? Well, the only people who know what happened are Mrs. Fulton and her husband tangentially because he didn't see her fall. He went around one side of these large pillars that hold up the walkway roof, and she went at an angle coming at this ramp, and they were about eight, nine feet apart. And he never saw her fall until she didn't show up on the other side of the column. And he testified he then went around, and there she was laying face down on the pavement. So how we can, in summary judgment, use Mr. Fulton's testimony as the be-all, end-all, bright line is beyond me. And that's where I believe summary judgment should not have been granted. It's a jury question. And because of the repairs made so quickly afterwards, there's no way to ever know what it was in terms of putting a yardstick or a ruler there and a level and measuring that differential because it doesn't exist. It is perfectly flush now and has been since three or four weeks after the event. And she had a very serious fall, and her testimony indicated also that she wasn't up to even doing much of anything until June. Schultz, you're not disputing that a defect of less than two inches in height, at least on a public way, is considered de minimis? I have no argument with the stated law. Okay. Well, are you arguing that the de minimis rule is different for a private way versus a public way? No. Okay. It's different in terms of its location to the entrance, to the traffic, or other aggravating factors, which we had a number of aggravating factors here. We had rain. Mrs. Fulton said she had gone in and out of that store several hundred times over her time here in Bloomington, but she never came at that ramp from an oblique angle. She didn't see it. In fact, she characterized it just ended up being asphalt on asphalt. There was no markings, nothing to differentiate that there was a height differential, and we're in an overcast, cloudy, rainy day. And she was moving quickly to try to get in and out of the rain. In fact, I find it rather unusual. Someone was right behind her, not her husband, and when she went down, the guy, instead of offering assistance, stepped right over her as he went on into the store. So I believe there are a number of aggravating factors present, plus then we have the holdings in the Kent versus Harris Bank case, which there was just three-eighths or something of an inch. That was actionable because it was right in front of the door of the bank. And that person, the lady in question who fell, had been in and out of that bank at least once a week for five years, which means she was in and out of there hundreds of times. It's so close to the facts on this case, it's almost scary in a sense because you usually don't find cases with that close of fact situation. Bledsoe was the same thing. It was just a crack in a marble floor that was right at the opening where the weather could get at part of the opening, and it was right where you enter the concourse. Again, to answer Justice Turner's question here, what we have is a situation where when we're in a commercial area, there is more traffic than on a city sidewalk out in my subdivision or something. We have right at the entrance the whole idea, I guess, of the de minimis rule is to not have either cities or municipalities or private organizations have to keep all of their sidewalks in pristine condition, which is an impossibility given our weather constraints here in Illinois. However, when it's right in front of your entrance, and all they had to really do here was just paint some yellow paint on this edge, and it would have stood out like a sore thumb. Then if somebody trips over it, we have a whole different fact situation. Why weren't you looking? But here it's blending asphalt on asphalt, and you can't see the height differential, and that's a jury question. It shouldn't come by way of summary judgment. Summary judgment is drastic. I mean, you've just thrown somebody out of court without a hearing on the evidence, and the cases are very clear that that isn't to be done unless there's just no argument about it. Well, here we've got two people saying different heights, and it's up to a jury to determine what those heights are. And I think it's very telling that Mrs. Fulton was very clear. She might not have been very articulate in explaining the edge of a ramp. She called it a crack and she called it a hole. Well, for her, you know, you hit something and down you go and shatter your arm. You're not thinking about much of anything. But the bottom line is we still have this edge that could have been marked. And, in fact, if we look around just out the windows here, you will see those markings right on the streets out there where there's a height differential. And it's little or no burden to a, whether it's a municipality or to a private company, to do just warn people that that thing's there. And while I can't use the repairs as proof of negligence, I certainly know what the law is on that, I can show that it was, in fact, changed, and we have no way to now go measure something because it was changed so quickly thereafter. And that, by the way, is admissible in the case law to show that particular issue, not negligence. So that is why I believe that summary judgment factually just can't lie here. Then we go into the case law of what differentiates. I'm not arguing with the de minimis rule. That's been the law for quite some time. But I am suggesting strenuously that there are reasons to vary from that two-inch amount just in the case law itself because you read the holdings in Bledsoe and in Harris Bank, Kent versus Harris Bank, and they were very tiny height differentials, less than a half an inch. But they were considered actionable simply because of their location and proximity to the entrance and that it was a commercial area as opposed to a residential area. And I think that makes a huge difference. Now, counsel in the Appalese case cited Putman as a ramp situation on a city sidewalk, and that case is wholly distinguishable because that is your typical sidewalk ramp where it's cut down into the concrete to come close to flush with the gutter on the street. And you don't attack that or come at that from an angle. You only can come at that straight on because there are curbs along the sides of it. And so that has nothing whatsoever to do with what we have here. This was a ramp that extended some ten feet out into the parking lot, and when you come up from the side and you can't see the height differential, it's a recipe for a fall. And that's exactly what happened here. And so for those reasons, I would strenuously ask this court to reverse the summary judgment and let us hash it out in front of a jury with the instructions as to what the law is, and they have the facts there for themselves to consider. Okay. Thank you. You'll have rebuttal. Despite counsel's somewhat misinterpretation of the facts of the case, I believe that the testimony as given by his clients was clear and basically not in dispute, aside from some definitions of hole, lip, edge. And because that is not in dispute as to how the incident occurred, the trial court properly granted summary judgment in this case. We know that the plaintiff and her husband were walking into the Kroger store. The curb and ramp were visible to the plaintiff. That's what Mrs. Fulton testified to. We know that her husband was approximately eight feet away from her when they were walking towards the store. We know that there was some bantering going on between the two of them, some joking around as they were walking from their car through the parking lot. And we also know that she fell, and we know that he didn't see her fall. We also know that after the incident, when they were in the emergency room, that's when she told her husband that her foot got hung up on something, her foot stopped. She didn't know on what it stopped. She wasn't really sure. And that it's not until after the incident, when they both go back, and he takes photographs and she goes back with him, that they determine, well, we believe this must be the area where you fell. So if we're going to take that area where she fell, that's what they believe when they came back after the incident, because she testified that she didn't know the depth of it, the height of it, nothing like that initially because she didn't see this crack in the, or the broken piece of asphalt in the parking lot where her foot got caught up on. We have then the testimony of her husband that this area where she fell was an inch and a half in height. I think what the plaintiff's counsel is referring to when he says, oh, there's a differentiation as to height, you know, it could be three inches to five inches. I think when you take a look at the end of Mrs. Fulton's deposition transcript, when she starts talking about that, she's really talking about the height from, basically the ramp from where it goes flush with the parking lot, and that's what she testifies to up to the curb. That's what is the five inches that she's talking about. But where the incident they believe occurred, the only testimony that we have is from Warren, Mr. Fulton, and he at that point says an inch, inch and a half. So it's our position that that condition was so slight as to not be actionable, and the trial court agreed and granted summary judgment for us. When you say not actionable, are you saying there is no duty? There is a duty to maintain your premises in a reasonably safe condition. However, given that this, I'll call it an imperfection, was so slight, that doesn't constitute an unreasonable risk of harm. What I'm asking is, is the de minimis analysis being less than two inches in height, is that an analysis that is done in the duty part of the cause of action, or is it part of the proximate causation? You know, it could be a combination of both how you look at it. I mean, the way that I look at it, Judge, is that you do have a duty to maintain your premises in a reasonably safe condition. Here we have, according to Mr. Warren, an inch, inch and a half height differential. I take a look at that as being so slight, based on the case law, that the cause of action cannot be sustained, based on the case law that we have. Now, whether this deviation was a proximate cause, it can't be sustained because a duty can't be shown. Is that what you're saying? There is no duty to, yes, there is no duty to maintain your premises in a perfect condition. We, as landowners, are not absolute insurers of our invitee's safety. So we have to make sure that there's no unreasonable risk of harm posed. And given this slight imperfection of one to one and a half inches, as testified by Mr. Fulton, that's not considered an unreasonable risk of harm. The other factors that you then take a look at to see if the de minimis rule doesn't apply, is if there are any aggravating factors. And while counsel mentioned the rain possibly, or a person possibly as being an aggravating factor, that doesn't really apply in this case. We know from the plaintiff's testimony, or Elizabeth's testimony, that this wasn't a hard rain at all. If anything, their testimony was it was a sprinkle, it was a light mist, to the point where she wasn't even carrying an umbrella, she wasn't having a hat on her head, she wasn't covering herself, and Mr. Fulton even testified that they were walking at a normal pace. So I don't believe the rain in and of itself would be constituted or could be considered an aggravating factor. Another item that counsel mentioned was pedestrians in the area, or the fact that this man, after Mrs. Fulton fell, kind of stepped over her. But if you take a look at Mrs. Fulton's testimony, what she does testify to is she didn't know if there were any people in the area at the time of her fall. So if she doesn't even know that there's anyone in the area at the time of the fall, how can you consider that as an aggravating factor? Because she didn't consider it as an aggravating factor. We know that nothing was obstructing her vision. We know that she didn't testify as to any distractions. There was, at some point, reference made to garbage cans, mulch, plants in the area. But even as Mrs. Fulton testified to, none of that played any role in her fall. Counsel, I want to get back to the approximate cause of the duty. Okay. What if this court came to the conclusion there's a material question fact as to whether the defect was de minimis? What then would this court do? If you came to the conclusion that this defect was de minimis, you would then affirm the trial court's grant of summary judgment. No, that was my question, though. My question was, what if we concluded there is a material question of fact as to whether the defect is de minimis? Then what should this court do? I don't. Well, first of all, let me step back. I don't see how you could reach that conclusion in light of the fact that the only testimony given as to what the condition of this asphalt was as to a height differential. Well, humor me. What if we said we think there's a question of fact, what would be the response? If there is a question of fact, if it's a genuine issue of material fact, then yes, you overruled the trial court's grant of summary judgment. So then it's not a question of duty. It's a question of duty in that we have to maintain our premises in a reasonably safe condition. That's what our duty is. Counsel, I'm not trying to give you a hard time. I'm having a hard time figuring out in my mind whether this de minimis rule is something that we consider in the duty part of the cause of action or whether it's a question that the jury considers in the proximate causation part, element of the cause of action. Sure. I think from all the cases that we've had where the courts have considered the various height differentiations, whether it's an inch, three-quarters of an inch, two inches or so, the courts at that point say, so de minimis, there's no cause of action. So I don't see how you have a duty at that point. How about the Harris case cited by counsel? Harris v. Old Kent Bank. Okay. Wasn't that less than an inch and a half? That was less than an inch and a half, but I think there were some other differences with that Harris case, though. Well, didn't that case say that we find a genuine issue of material fact exists as to whether the cyborg defect was de minimis? I'm pretty sure it's what it said unless I have written it down incorrectly. But I think, Judge, you have to look at the facts of each case before you. You can take the Harris case. You can take the Blood Cell case. You can take the cases that we cited. And you have to look at the facts of our case that's presented to you. Well, I'm looking at it. The cases are confusing to me. I'm not exactly sure what the cases are intended to say. The way that I'm reading the cases is I take a look at it like this. If the imperfection is less than two inches, that's considered de minimis. Then let's take a look at other factors. Are there any other aggravating factors involved in the case that's before us to see whether or not there is a cause of action? And in our case, if we take that analysis, there are no other aggravating factors to take it out of the realm of a de minimis condition. Okay. I think that's a good response in helping me get there. I want you to get there. Okay. Well, I'm trying. Let's get back to the Harris case. Critical in that case was the fact that there was only one way to enter and one way to exit, one egress, one ingress. We have the same thing here. That court thought that was a significant factor in concluding that the de minimis rule either didn't apply or, I think it said there was a genuine issue of fact whether it applied. Why is this case any different? This is just one way to get into Kroger's and one way to get out. However, I'm not quite sure with the Harris case. You know when you go to like, for example, we'll take the entry into this building here. Okay. There is one way to go up. You have to take the steps to go up. Right. Okay. You take this big Kroger store, you don't have to go over this ramp to get to the entryway. You could come from this angle. You could come from this angle. And I'm not quite sure from the Harris case, you know, if you had to walk on that concrete slab in order to get into the bank. And that might be the difference here. But there were also, I think, in that case, I think they were talking about But you seem to be acknowledging that if there is only one way to get in and one way to get out, that would make a difference in application of the de minimis rule? I think that's a factor that you have to consider. But I think you have to look at how the entry can be gained into the building. No, I get that. Right. But, for example, I had this one other case where a plaintiff, I'm just giving you an analogy here, where the plaintiff tripped and fell walking into her dentist's office.  We both agreed there was only one route to get into that dentist's office. The motion for summary judgment was denied. Because you had to take a direct path. You don't have to do that here in the Berger case. While there's one entry, you didn't have to walk up certain steps like you have to do to get into the courthouse here. You didn't have to walk down one slab. Let me stop there and go back to your dentist's case. Okay. I would say so what? What's that have to do with foreseeability, whether there's only one direct way in or one direct way out? What's that got to do with the foreseeability of injury? Why should I care about that? Why should I acknowledge that the Harris case was correctly decided? Sure. I think looking if there is only really one direct path to get into a facility, that it might be foreseeable that an owner would also be taking that same direct path and see that there's some type of height differential between concrete slabs. We don't have this in our case. We have the owner, Kroger, the owner of the premises here. It's a big shopping mall here. While there might be the main entrance to get into the store, the main door to get into the store, like I said, you don't have to take that direct path to get into the store. Like Mrs. Fulton, she could have walked eight feet away just as her husband did to get into the store. She didn't do that. So that's why I'm thinking that might be the difference. I don't know if that helps you or not. Well, I think it's foreseeable that she might take that way in. Somebody at some point on some day is going to take that exact way in. And she took that exact way in, and what happened? Her foot got caught on something that was a de minimis condition, and because it was so slight, as testified by her husband, we don't have a duty to maintain our property in a perfect condition. So in light of the fact that we believe that the de minimis rule applies here, we don't believe that any type of aggravating factors were presented here. It's our position that the trial court properly granted summary judgment in this case. We request that the appellate court affirm the trial court's grant of summary judgment. Thank you. Okay. Thank you. Any rebuttal? Just listening to the back and forth between the court and counsel, I would ask the court also to look at Bledsoe, where one of the issues between the litigants there and the observations of the court was that in Bledsoe, they had a partially enclosed entryway, which is exactly what we have here in Kroger, and that it could be easily monitored for defects. In other words, it was a space from this podium to the front of the bench there. That's the only space that was available to get into that, and here we have this edge of this ramp coming at it from an angle, and they could have easily seen that. I think that we're very, very close on these two cases. The cases cited by counsel, whether it be Hartung and all that, that sets the broad brush of the two-inch de minimis rule, but that doesn't apply here. And this court in Bledsoe said it wouldn't have been a big deal to fix that. It's right in front of your door. What are you thinking, in a sense, is what the court was saying. Fix it. It's right there. It's not two blocks away out or clear across a parking lot somewhere where you wouldn't normally see it. And so for that reason, I really think that counsel is stretching the facts here. She said Mrs. Fulton had to go back to determine where she fell later. No, her testimony and her deposition was I was half on the sidewalk, half on the ramp. She knew exactly where she went down. It wasn't like she went ten more steps before she fell down. She went down right smack when her foot caught, and that was right where the curb meets the top of the ramp. And she said that elevation was between three and five inches. And that is clear testimony from the person who actually knows where she fell. Mr. Fulton, not seeing her fall, had no idea where she fell. And, yes, as you go down the ramp, it gets to one and a half inches and then to nothing. But he didn't know where it was. And we don't know from his testimony. You've got to guess. It's his guesstimate of where was that inch and a half. We don't know. That's why it's a jury question. And as for her argument about, well, it wasn't raining that hard, et cetera, there is a specific statement, I can't right off the top of my head say which common law record page it was, but she said we were trying to get in out of the wet. And so while they were not running, I'm not going to say that, they didn't. They were just chugging right along. But Mrs. Fulton clearly wanted to get out of the dampness. And that is all foreseeable. You know there's going to be bad days, rainy days, darker days. When the sun starts to set, that whole thing becomes dark. Now you've really got a problem, and why doesn't it have the yellow reflective paint on it? I mean, that's some kid in the back of the store with a bucket and a brush, and he could have done that in ten minutes. And then finally, counsel said that she didn't know if other persons were present, but then how could she testify he stepped over her if she didn't know somebody was right behind her? So I find that argument a little disingenuous also. And just to sum up, it would be my suggestion here that this court carefully consider the Kent Bank, Harris-Kent Bank, and the Bledsoe, because those two cases out of everything that's been cited by both parties really hone down in on what is going here. And Bledsoe, it was about the burden to the landowner. Is this a big deal or not? And it wasn't a big deal. Just go fix it, and you'll be fine. So I thank you for your time. All right. Thanks to both of you. The case is submitted. The court is in recess.